USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _12/13/2020_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                         :

UNITED STATES,                       :

                                         :

                                         :

      -v-                          :                         1:18-cr-471-GHW

                                         :

MARQUS SERGEANT,                 :                         <u>ORDER</u>

                                         :

                         Defendant. :
------------------------------------------------------------ X

GREGORY H. WOODS, United States District Judge:

      Marqus Sergeant was a leader of a drug trafficking organization that sold crack in a housing project in lower Manhattan. The Court sentenced him to 66 months imprisonment for his role in the offense in July 2019. This sentence was slightly greater than the 60 month mandatory minimum sentence associated with his crime of conviction. Fourteen months after his sentencing, Mr. Sergeant now he moves for compassionate release because of his underlying health conditions. Because the Court's evaluation of the sentencing factors does not support Mr. Sergeant's requested release 30 months into his sentence, his motion is denied.

## I.     BACKGROUND

      On Jul 1, 2019, the Court sentenced Marqus Sergeant to a term of 66 months imprisonment. Sentencing Transcript, Dkt. No. 91 ("Tr."). That sentence was just six months more than the mandatory minimum sentence for his crime of conviction—leadership of a drug trafficking conspiracy. The sentence imposed by the Court represented a substantial downward variance from the advisory sentencing guidelines range of 87 to 108 months of imprisonment.

      As described during the sentencing hearing, Mr. Sergeant's crime was very serious. He was "a leader of a drug-trafficking organization that sold very large quantities of crack cocaine in and around the Alfred E. Smith Houses in lower Manhattan . . . the place where Mr. Sergeant lived his

entire life." Tr. 18:24-19:3.  "Mr. Sargeant purchased crack and powdered cocaine from wholesale suppliers.  He then distributed those drugs to lower tier members of the DTO, drug-trafficking organization.  Those lower-tier members of the DTO would then sell the drugs and return the proceeds to Mr. Sargeant."  *Id.* at 19:4-8.

Mr. Sergeant was born in July 1987--he was on the cusp of his 32d birthday when he was sentenced .  Tr. at 19:20.  At the time of his sentencing, the Court understood that the defendant was generally in good health.  Tr. at 20:18.  The presentence report noted no health issues, but observed that he carried 200 pounds on his 5' 7" frame.  At sentencing, the Court noted the many positive forces in Mr. Sergeant's life, including the continued support of his parents and partner.  Tr. at 20:7-17.  At the same time, the Court expressed its substantial concerns about the need for personal deterrence for Mr. Sergeant.  The factors that motivated that concern included "his limited education, his limited legitimate work history, and his long history of substance abuse."  Tr. 22:17-18.  And beyond that was Mr. Sergeant's significant criminal history, which included two prior convictions for crimes involving the sale of controlled substances.  Notwithstanding those prior convictions, and the substantial sentences associated with them, Mr. Sergeant continued to sell drugs, resulting in this conviction.

On November 17, 2020, the Court received a memorandum of law from Mr. Sergeant, acting *pro se*, requesting that the Court order his compassionate release pursuant to 18 U.S.C. § 3582(c) (the "Motion").  Dkt. No. 100.  The Government filed its opposition on November 18, 2020 (the "Opposition").  Dkt. No. 101.  The Court has not received a reply from Mr. Sergeant.

Mr. Sergeant's motion points to the incidence of COVID-19 at the USP Lewisburg, where he is incarcerated, and his health conditions—principally obesity and hypertension—as the basis for the Court to order his compassionate release.

According to the United States, at the time of its Opposition, Mr. Sergeant had served 29

months of his 66 month sentence (assuming no good-time credit). Opposition at 2-3. Mr. Sergeant

was scheduled to be released on March 25, 2023. *Id.* at 3. So, Mr. Sergeant asks the Court to release

him to home detention less than half way through his 66 month sentence, and 30 months earlier

than the mandatory minimum term of imprisonment associated with his crime of conviction.

## II.    LEGAL STANDARD

As a general rule, courts are prohibited from modifying a defendant's term of imprisonment

once it has been imposed. 18 U.S.C. § 3582(c) ("The court *may not* modify a term of imprisonment

once it has been imposed except" in specified circumstances) (emphasis added). The statute

provides for specific exceptions to that general rule: "upon motion of the defendant after the

defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to

bring a motion on the defendant's behalf," "after considering the factors set forth in section 3553(a)

to the extent they are applicable, if it finds that--extraordinary and compelling circumstances warrant

such a reduction . . . and that such a reduction is consistent with the applicable policy statements

issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider

the "factors set forth in section 3553(a) to the extent that they are applicable." *Id.* § 3582(c)(1)(A).

"Congress has delegated authority to the Sentencing Commission ('USSC') to 'describe what

should be considered extraordinary and compelling reasons for sentence reduction.'" *United States v.*

*Ebbers*, — F. Supp. 3d —, No. (S4) 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8,

2020) (quoting 28 U.S.C. § 994(t)). The relevant policy statement is U.S.S.G. § 1B1.13 (the "Policy

Statement"). The Policy Statement states that a court may reduce a defendant's term of

imprisonment

> if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that
> they are applicable, the court determines that—
>
> (1) (A) extraordinary and compelling reasons warrant the reduction; or
>
>     (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in

3

prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2)   the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3)   the reduction is consistent with this policy statement.

1 U.S.S.G. § 1B1.13.

The commentary to the Policy Statement provides guidance regarding the circumstances in which "extraordinary and compelling reasons" for a reduction in a defendant's sentence exist.[1]  The commentary highlights three particular grounds for such a finding:  the medical condition of the defendant; the age of the defendant; and family circumstances.  1 U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). The Court is not limited to the consideration of those factors alone, however.  The Policy Statement anticipates that other reasons can support a finding of extraordinary and compelling circumstances that permit a sentence reduction.  1 U.S.S.G. § 1B1.13 cmt. n.1(D) (permitting a finding of extraordinary or compelling circumstances when "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C) [medical condition, age, and family circumstances of the defendant]");

---

[1]  The Policy Statement has not been updated since the passage of the First Step Act of 2018 (the "First Step Act"), Pub. L. No. 115-391, 132 Stat. 5194.  The First Step Act amended 18 U.S.C. § 3582 to permit a defendant to bring a motion for compassionate release if the BOP chose not to file one on his behalf.  The language of the Policy Statement does not reflect the fact that under the First Step Act, the Court will be making determinations regarding the existence of compelling and extraordinary circumstances without the input of the BOP.  As the court observed in *Ebbers* the Policy Statement "is at least partly anachronistic because it has not yet been updated to reflect the new procedural innovations of the First Step Act.  For example, it refers in its opening line to a 'motion of the Director of the Bureau of Prisons.'"  *Ebbers*, 2020 WL 91399, at *4.  Similarly, the commentary's formulation of the catch-all provision refers only to a determination by the BOP, not by a district court.  1 U.S.S.G. § 1B1.13 cmt. n.1(D) ("As determined by the Director of Prisons, there exists . . . .").  In *United States v. Brooker*, the Second Circuit confirmed that the "First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."  *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).   !

*see also United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at *6-7 (S.D.N.Y. Apr. 6, 2020) (outlining the discretion of district courts in evaluating extraordinary and compelling circumstances).

The Policy Statement states that the following medical conditions are sufficient to support a finding of extraordinary and compelling reasons for a reduction in a defendant's sentence:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—
(I) suffering from a serious physical or medical condition,
(II) suffering from a serious functional or cognitive impairment, or
(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

1 U.S.S.G. § 1B1.13 cmt. n.1(A). According to the commentary to the Policy Statement, compelling medical conditions require a showing of a substantial, actual deterioration in the medical condition of the defendant—either "a terminal illness" or "a serious physical or medical condition . . . from which he or she is not expected to recover."

In this case—as in every other COVID-19 related compassionate release application that the Court has reviewed—the defendant's medical condition is not the type of "Medical Condition" described in the Policy Statement: he is not suffering from a terminal illness, and he does not have a medical condition from which he is not expected to recover. Instead, he is at risk of getting a disease, which in some cases is terminal. He has medical conditions that increase the risk of an adverse outcome if he gets COVID-19. So a finding of extraordinary and compelling circumstances

in this case would rely not on the defendant's medical condition as described in the Policy Statement alone. Instead, the courts that have found the existence of extraordinary and compelling circumstances for a reduction in a defendant's sentence as a result of COVID-19 rely on an evaluation of a combination of factors including the defendant's physical condition and the court's assessment of the incremental risk associated with COVID-19. Many courts evaluating the existence of compelling and extraordinary circumstances also weigh the adequacy of the BOP's response to the pandemic, perhaps with an eye to the policy objective of thinning jail populations to reduce the likelihood of the spread of the disease. *See, e.g., United States v. El-Hanafi*, No. 10-CR-162 (KMW), 2020 WL 2538384, at *5 (S.D.N.Y. May 19, 2020); *United States v. Zubkov*, No. 14-CR-773 (RA), 2020 WL 2520696, at *3 (S.D.N.Y. May 18, 2020).

This is difficult terrain for a court. To the extent that an evaluation of the existence of extraordinary and compelling circumstances has evolved to require an assessment of the adequacy of the BOP's response—individual trial judges assessing individual cases on an emergency basis may not have the opportunity to assess all of the systemic considerations facing the institution. And the assessment will vary by facility and time. The BOP's response has evolved over the course of the pandemic: one might reasonably be expected to have a different view of the adequacy of the BOP's response, and the threat to inmates, in March than in August. Harder still is the task of deciding whether an inmate should face any incremental amount of risk—COVID-19 is dangerous; and life is invaluable. For that reason, the Court looks to the Policy Statement and its commentary for guidance regarding what types of medical conditions should drive a finding of extraordinary and compelling circumstances that justify the reduction of a defendant's sentence.

## III.   DISCUSSION

COVID-19 is a global pandemic. *See* https://www.who.int/emergencies/diseases/novel-coronavirus-2019/events-as-they-happen (last visited May 25, 2020). Since its arrival in the United

States, the federal and local governments have reacted to stem the risk associated with the disease.

The risk of death associated with the disease varies substantially based on the age of the infected patient. *See, e.g.*, https://data.cdc.gov/NCHS/Provisional-COVID-19-Death-Counts-by-Sex-Age-and-S/9bhg-hcku (Last visited May 25, 2020). For example, in New York City—the original epicenter of the disease in the United States—the death toll has fallen disproportionately on people who were more than 75 years old. *See* https://www1.nyc.gov/site/doh/covid/covid-19-data.page (Last visited June 10, 2020) (showing 8,397 confirmed deaths from COVID-19 in the 75+ age bracket, or 48.66% of confirmed COVID-19 deaths). For people in the 18-44 age bracket, in which Mr. Sergeant falls, the mortality rate was dramatically smaller. *Id.* (showing 678 confirmed deaths from COVID-19 in that age cohort, or 3.9% of confirmed COVID-19 deaths).

The risk of death from COVID-19 is greater for people with certain underlying health conditions. The Centers for Disease Control and Prevention track underlying health issues that are reported to be associated with deaths as a result of COVID-19. *See* https://data.cdc.gov/NCHS/Conditions-contributing-to-deaths-involving-corona/hk9y-quqm (Last visited August 30, 2020). The risk of death associated with those comorbidities also varies dramatically by age.

In this case, Mr. Sergeant's relative youth weighs against a finding of "extraordinary and compelling" reasons for his release, notwithstanding the nature of his underlying health issues. So too does the timing of this application--coming, as it does, on the cusp of the anticipated roll-out of a vaccine to protect against COVID-19. Nonetheless, assuming, without holding, that Mr. Sergeant's health conditions, and the incremental risk associated with the possibility of catching COVID-19 at his facility was sufficient to give rise to compelling and extraordinary reason for his release, the Court would not grant the requested relief.

In considering all of the § 3553(a) factors, the Court does not believe that a reduction in Mr.

Sergeant's sentence is warranted.  While the factor related to the need for Mr. Sergeant to receive medical care arguably weighs somewhat more heavily in favor of a lesser sentence now, the nature of his crime was very serious.  He led a group of drug dealers who sold substantial quantities of crack-- polluting the community in which he had grown up.  And, unfortunately, the need for personal deterrence for Mr. Sergeant remains high:  he engaged in this crime after serving substantial sentences for two prior drug convictions.  The Court believed at the time of sentencing that Mr. Sergeant would benefit from drug treatment and counseling, in particular the RDAP program.  Tr. at 23:21-24, 28:9-12.  The Court understands that Mr. Sergeant expected to begin his participation in the program at approximately this time.  Motion at ECF p. 14.  The Court continues to believe that Mr. Sergeant should work to complete that program before he is released given his history of drug use and prior criminal history.  The Court's assessment of all of the other § 3553(a) sentencing factors, including the need for general deterrence, all continue to weigh heavily against a modification of his sentence now.

In sentencing Mr. Sergeant to a sentence that was 21 months below the bottom of the advisory sentencing guidelines range, the Court was very conscious of the admonition of § 3553 to "impose a sentence sufficient, but not greater than necessary" to comply with the purposes of the statute.  The sentence imposed by the Court was appropriate for Mr. Sergeant at the time and the Court's assessment of the § 3553(a) factors do not yield a different conclusion today, notwithstanding COVID-19 and its complications.  Mr. Sergeant has not met his burden to show that an earlier release is appropriate.

In sum, having considered all of the information presented to the Court in connection with this application, the Court does not believe that a reduction in Mr. Sergeant's sentence is warranted. His motion is DENIED.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to mail this order to Mr. Sergeant using the return address provided by Mr. Sergeant in the letter filed at Dkt. No. 100 at ECF page 42.

SO ORDERED.

Dated: December 13, 2020

GREGORY H. WOODS
United States District Judge